614 So.2d 1075 (1992)
William Thaddeus TURNER, Petitioner,
v.
Richard L. DUGGER, etc., Respondent.
William Thaddeus TURNER, Appellant,
v.
STATE of Florida, Appellee.
Nos. 75848, 77062.
Supreme Court of Florida.
December 24, 1992.
Rehearing Denied March 25, 1993.
*1077 C. Graham Carothers, Kenneth R. Hart and Timothy B. Elliott of Ausley, McMullen, McGehee, Carothers & Proctor, Gwendolyn Spivey, and Steven M. Goldstein, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Richard B. Martell, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
William Thaddeus Turner was convicted of the first-degree murders of his estranged wife, Shirley Turner, and her roommate, Joyce Brown. The trial court sentenced Turner to life imprisonment for the murder of his wife and, in accordance with the jury's recommendation, to death for the murder of Brown. Following a remand, this Court affirmed the convictions and sentences on direct appeal. Turner v. State, 530 So.2d 45 (Fla. 1987), cert. denied, 489 U.S. 1040, 109 S.Ct. 1175, 103 L.Ed.2d 237 (1989). A death warrant was signed on March 29, 1990, with execution scheduled for May 30, 1990.
Turner filed a motion for stay of execution and a limited petition for writ of habeas corpus. He was granted a stay after which he filed an amended petition for writ of habeas corpus and a motion to vacate conviction and sentence pursuant to Florida Rule of Criminal Procedure 3.850. The trial judge denied the motion for postconviction relief without granting an evidentiary hearing. Turner's appeal of the denial of the motion and the pending petition are before us for disposition. We have jurisdiction pursuant to article V, section 3(b)(1), (9), Florida Constitution.

RULE 3.850 MOTION
Turner raises sixteen claims in his rule 3.850 motion: (1) the trial court applied the Florida statutory scheme for the weighing of aggravating and mitigating circumstances in an arbitrary and capricious manner; (2) trial counsel failed to adequately investigate, prepare, and present mitigating circumstances in the penalty phase; (3) the Florida sentencing scheme placed upon Turner the burden of proving that death was not the appropriate sentence; (4) trial counsel failed to investigate and arrange for competent mental health assistance; (5) trial counsel was ineffective at the guilt phase; (6) trial counsel failed to effectively challenge the application of aggravating factors; (7) trial counsel failed to object to improper prosecutorial argument relative to nonstatutory aggravating factors; (8) trial counsel failed to argue that giving Turner the burden of proving that life was the appropriate sentence violated his right to a reliable sentencing determination; (9) trial counsel failed to object to victim-impact evidence in violation of Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987); (10) trial counsel failed to object to instructions and argument that diminished the jurors' sense of responsibility in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); (11) trial counsel failed to object to the trial court's and the prosecutor's assertions that sympathy and mercy were improper considerations for the jury; (12) trial counsel failed to ensure a reliable and individualized capital-sentencing determination; (13) the cumulative effect of prosecutorial misconduct rendered the trial and sentence fundamentally unfair; (14) the *1078 murders were not "cold, calculated, and premeditated" as defined by Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988), and the trial court failed to limit construction of this aggravating factor in violation of Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988); (15) the trial court's instructions concerning the "heinous, atrocious, or cruel" aggravating factor conflict with Maynard v. Cartwright; (16) the trial court failed to record charge and bench conferences and trial counsel failed to object. For the following reasons we deny relief.
Turner attempts to circumvent this Court's prohibition against using postconviction proceedings as a means of obtaining a second appeal of issues that were raised on direct appeal. Thus, claims 14 and 15 are procedurally barred because they, or variations thereof, were raised on direct appeal. Bush v. Dugger, 579 So.2d 725, 727-728 (Fla. 1991); Swafford v. Dugger, 569 So.2d 1264, 1267 (Fla. 1990); Roberts v. State, 568 So.2d 1255, 1258 (Fla. 1990).
Claims 5, 7, 9, and 11 involve assertions of ineffective representation relative to counsel's failure to make various objections during the guilt and penalty phases of the trial. Having carefully reviewed the record, we conclude that trial counsel's performance pertaining to these issues did not fall below the standard articulated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In other words, counsel's performance was not so deficient that he was not "functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. As to these claims, we conclude that "counsel's assistance was reasonable considering all the circumstances." Id. at 688, 104 S.Ct. at 2065.
As to claim 1, Turner alleges fundamental error in the trial court's sentencing order. He argues that under Campbell v. State, 571 So.2d 415 (Fla. 1990), and related cases decided since his direct appeal, the trial court erred in making its findings of mitigating circumstances and in weighing the mitigating factors against the aggravating factors. We find that none of these cases represent such a major constitutional change in the law as to require retroactive application on collateral attack. See Witt v. State, 387 So.2d 922 (Fla.), cert. denied, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980).
In claims 2 and 12, Turner alleges that trial counsel was ineffective in that he failed to investigate and present mitigating circumstances, he failed to argue for a finding of nonstatutory mitigation, and he failed to inform the jurors in closing argument that they could consider mitigating evidence during the guilt phase. In support of his claims that counsel was ill-prepared to present mitigation evidence, Turner points to his motion for continuance, which was denied just prior to sentencing. The trial court found no merit to these claims and we agree.
A review of the record reveals that counsel presented evidence relating to Turner's good character, heroic effort in preventing a rape, family background, intellectual ability, educational achievement, military service, employment, emotional anguish over the loss of his marriage and family, religious feelings, financial hardship, and health problems. The record also reveals that trial counsel presented evidence relating to Turner's mental state at the time of the offense through the testimony of three mental health experts, two during the guilt phase and one in the penalty phase. Counsel argued in a presentence memorandum that there was sufficient evidence to constitute nonstatutory mitigation under Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). The trial court's jury instructions adequately informed the jurors that they could consider evidence presented in the guilt phase.
Under Strickland, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 *1079 U.S. at 691, 104 S.Ct. at 2066. Applying this standard, we do not find that defense counsel's performance was "outside the wide range of professionally competent assistance." Id. at 690, 104 S.Ct. at 2066.
In claims 3 and 8, Turner contends that Florida's capital-sentencing scheme unconstitutionally shifted the burden to him to prove that life is the appropriate sentence. Each of these claims assert that counsel was ineffective in failing to make this argument. Allegations that counsel was ineffective are without merit in that the record shows he argued this point in a pretrial motion. Turner's substantive claims regarding "burden-shifting" are procedurally barred because they should have been raised on direct appeal. Engle v. Dugger, 576 So.2d 696, 703 (Fla. 1991).
Claim 4 alleges that counsel failed to provide the mental health experts with sufficient background information to ensure competent evaluations. The record refutes this allegation. The experts were given the opportunity to interview Turner and administer psychological tests. They reviewed depositions and statements of witnesses, police reports, and documents from Turner's divorce file and attempted Baker Act proceeding. The experts were aware of Turner's beliefs that his wife and Brown were lesbians and prostitutes. One of the experts expressly described Turner as delusional at the time of the murders, feeling a moral justification in committing the homicides. Trial counsel was not ineffective "simply because he relied on what may have been less than complete pretrial psychiatric evaluations." State v. Sireci, 502 So.2d 1221, 1223 (Fla. 1987). The fact that Turner recently has secured more favorable expert opinions is an insufficient basis for relief. Provenzano v. Dugger, 561 So.2d 541 (Fla. 1990).
Turner argues in claim 6 that counsel failed to effectively challenge the application of three of the aggravating circumstances. On direct appeal, this Court affirmed the trial judge's findings that the homicide was cold, calculated, and premeditated and that the homicide was committed during the felony of burglary. We specifically noted that Turner did not deny that he had been previously convicted of the murder of his estranged wife. Turner, 530 So.2d at 50 n. 1. The record indicates that during the charge conference, in closing argument and by filing a legal memorandum with the court, counsel attacked the applicability of these aggravating factors on the grounds now asserted. We conclude that counsel's alleged deficiencies are refuted by the record and do not involve actions required of reasonably competent counsel.
Claim 10 asserts that trial counsel failed to object to instructions and argument that diminished the jurors' sense of responsibility in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). We find that the jury instructions adequately advised the jury of its responsibility. The prosecutor's comments were consistent with Florida law on capital sentencing and are not controlled by Caldwell. Provenzano; Combs v. State, 525 So.2d 853 (Fla. 1988).
Claim 13 argues that the cumulative effect of prosecutorial misconduct rendered the trial and sentence fundamentally unfair. Counsel was not ineffective in failing to object to the prosecutor's conduct which, even if found to have the effect complained of, did not deprive Turner of a fair trial. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. Based upon our finding that the prosecutor's comments did not deprive Turner of a fair trial, we find no fundamental error.
In claim 16, Turner alleges that trial counsel failed to ensure that the charge and bench conferences were recorded. The record reveals that three charge conferences were recorded and transcribed, two in the guilt phase and one before sentencing. The trial court required the proposed instructions and the instructions as read to the jury to be in writing and filed them with the clerk. Thus, the failure to record any portion of the statements made by the court and the attorneys at the charge conferences is harmless. Songer v. Wainwright, 423 So.2d 355, 356 (Fla. 1982). *1080 The absence of transcribed bench conferences did not violate the mandate of section 921.141, Florida Statutes (1983), and the fact that bench conferences were not reported did not prejudice the appeal. Morgan v. State, 415 So.2d 6, 8-9 (Fla.), cert. denied, 459 U.S. 1055, 103 S.Ct. 473, 74 L.Ed.2d 621 (1982).

PETITION FOR HABEAS CORPUS
Turner raises three issues in his petition for habeas corpus. Turner's argument in issue I is twofold. First, he argues for the retroactive application of Campbell v. State and other recent cases decided since his direct appeal. This argument is without merit, as discussed in claim 1 of his motion for 3.850 relief, in that none of the cases Turner relies on is such a "jurisprudential upheaval" in the law as to require retroactive application on collateral attack. Witt. Second, Turner argues that the legislative intent behind section 921.141(5)(b), Florida Statutes (1983), requires this Court to reconsider the propriety of finding the contemporaneous murder of Shirley Turner a "prior violent felony." This argument is also without merit. In King v. State, 390 So.2d 315, 320-321 (Fla. 1980), cert. denied, 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 825 (1981), we considered legislative intent in approving a contemporaneous conviction as a "prior violent felony."
Issue II raises a number of ineffective assistance of appellate counsel claims. Finding no merit to Turner's claim that a contemporaneous homicide cannot be a "prior violent felony," we find that appellate counsel was not ineffective for failing to argue this point. Turner raised and we rejected on direct appeal arguments relating to: (1) the disproportionality of the death sentence; (2) failure in the sentencing order to find nonstatutory mitigating factors; (3) the improper finding of "cold, calculated, and premeditated" as an aggravating circumstance, (4) the exclusion of Baker Act evidence, and (5) the introduction into evidence of the victim's taped telephone conversation. We decline to revisit these issues, or variations thereof, presented in the guise of ineffective assistance of appellate counsel. Blanco v. Wainwright, 507 So.2d 1377, 1384 (Fla. 1987). Alleged prosecutorial misconduct and Booth error were not preserved for review and we do not find appellate counsel ineffective for failing to argue these issues.
Turner faults appellate counsel for failing to argue as error the trial court's refusal to instruct on and allow argument regarding the suitability of a sentence of two consecutive minimum twenty-five year prison terms. Turner relies on Jones v. State, 569 So.2d 1234, 1239-1240 (Fla. 1990), which held that defense counsel "was entitled to argue to the jury that Jones may be removed from society for at least fifty years should he receive life sentences on each of the two murders." Jones relies on McCleskey v. Kemp, 481 U.S. 279, 304, 107 S.Ct. 1756, 1773-74, 95 L.Ed.2d 262 (1987), which was decided before Turner's direct appeal. The record reveals that defense counsel argued at the penalty phase that if sentenced to life imprisonment on each count for which he was convicted, Turner would spend the rest of his natural life in prison. The court's limitation of further argument on this issue was harmless. The trial court's refusal to instruct on this point was not error in that the standard jury instruction for first-degree murder adequately informs the jury of the possibility of consecutive life sentences. Appellate counsel was not ineffective in failing to argue this point.
Turner asserts that appellate counsel was ineffective in not arguing error as to various rulings of the trial court. We do not agree. The trial judge did not abuse his discretion in denying a motion for continuance or in excluding additional mental health testimony where further evidence of these matters would have been cumulative. Any error in the trial court's refusal to give a requested special instruction on voluntary manslaughter was harmless because Turner was convicted of first-degree murder, which is two steps removed from the crime of manslaughter. See Bruno v. State, 574 So.2d 76, 81 (Fla.), cert. denied, ___ U.S. ___, 112 S.Ct. 112, 116 L.Ed.2d 81 (1991); Perry v. State, 522 So.2d 817, *1081 819-820 (Fla. 1988). Appellate counsel was not ineffective in failing to argue harmless error. Knight v. State, 394 So.2d 997 (Fla. 1981).
In issue III, Turner argues that the trial court did not use jury instructions and special verdict forms which would have required the jury to specify whether conviction for first-degree murder was based upon premeditation or felony murder. Florida law does not require the use of special verdict forms. Buford v. State, 492 So.2d 355 (Fla. 1986). Moreover, defense counsel did not object to the verdict forms on this basis.
Finally, we note that although the jury was given an instruction on the aggravating circumstance of heinous, atrocious, or cruel similar to that which was recently ruled unconstitutionally vague by the United States Supreme Court in Espinosa v. State, ___ U.S. ___, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992),[1] Turner failed to object on constitutional or vagueness grounds and thus deprived the trial court of an opportunity to rule on the issue.[2] Turner thus waived the claim. See Kennedy v. Singletary, 602 So.2d 1285 (Fla. 1992). Even if he had objected, we find the error harmless beyond a reasonable doubt since there is no reasonable possibility that the erroneous instruction contributed to the jury recommendation. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
The denial of the motion for postconviction relief is affirmed. The petition for writ of habeas corpus is denied.
It is so ordered.
OVERTON, SHAW and GRIMES, JJ., concur.
McDONALD, J., concurs specially with an opinion.
BARKETT, C.J., and KOGAN, J., concur in result only.
HARDING, J., recused.
McDONALD, Justice, specially concurring.
Although I disagreed in the original review that death was an appropriate punishment in this case, and still feel that way, I find no constitutional infirmity in the judicial process of Turner's conviction, sentence, or review thereof and join in the denial of relief.
NOTES
[1] The instruction in the present case read: "The crime for which the defendant is to be sentenced was especially wicked, heinous, atrocious or cruel."
[2] Turner's only objection was as follows: "I object to [the heinous, atrocious, or cruel instruction]. I don't think it was supported by the testimony of the medical examiner in trial. He couldn't tell one way or other whether it was immediately causing unconsciousness. The first blow was to the heart of Shirley Turner. The blood would flow from the heart and she would be unconscious."